IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIEBOLD, INCORPORATED | ) | CASE NO.: |
| | ) | |
| and | ) | JUDGE: |
| | ) | |
| DIEBOLD SELF-SERVICE SYSTEMS | ) | **COMPLAINT FOR COPYRIGHT** |
| | ) | **INFRINGEMENT,** |
| | ) | **MISAPPROPRIATION OF** |
| | ) | **TRADE SECRETS, UNFAIR** |
| Plaintiffs | ) | **COMPETITION AND FALSE** |
| | ) | **DESIGNATION OF ORIGIN, BREACH** |
| | ) | **OF CONTRACT, PATENT** |
| v. | ) | **INFRINGEMENT AND** |
| | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| NUSOURCE FINANCIAL, INC. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendant | ) | **ENDORSED HEREON** |

Diebold, Incorporated and Diebold Self-Services Systems (collectively "Diebold") for its Complaint against NuSource Financial, Inc. ("NuSource") aver as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This is a Complaint seeking recourse for copyright infringement, misappropriation of trade secrets, unfair competition and false designation of origin, breach of contract and patent infringement. Diebold seeks compensatory and equitable relief.

2. Diebold, Incorporated is a corporation formed in Ohio, whose principal place of business is in Summit County, Ohio.

3. Diebold Self-Service Systems is a general partnership formed in New York, whose principal place of business is in Summit County, Ohio. Diebold Self-Service Systems is a wholly owned subsidiary of Diebold, Incorporated.

4. NuSource is a corporation formed in Minnesota, whose principal place of business is in Eden Prairie, Minnesota.

5. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (copyright, trademark and patent jurisdiction), 17 U.S.C. § 501 (copyright infringement), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (unfair competition and false designation of origin), and 35 U.S.C. § 271 (patent infringement).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400. Further, pursuant to Part 7(b) of the Technology License Agreement dated September 28, 2005 between Diebold and NuSource ("Technology License Agreement") and Part 16 of the Parts Supply Agreement dated December 6, 2005 between Diebold and NuSource ("Parts Supply Agreement"), NuSource agreed to resolve the disputes which are the subject of this action in this District. The Technology License Agreement and the Parts Supply Agreement have not been attached to this Complaint as they are confidential documents.

## FACTS

7. Diebold realleges the allegations of Paragraphs 1 through 6 of this Complaint as if fully rewritten herein.

8. Diebold is the owner of the trade secret and copyright interests in numerous trade secret and copyrighted computer programs used with automated teller machines ("ATMs"), also known as automated banking machines.

9. Diebold owns all right, title and interest in an unpublished copyrighted work of computer software registered in the following: Copyright Registration TXu 834-249, entitled "TCS 4.50.01," registered on May 12, 1999, in all of its versions (Exhibit 1); Copyright Registration TXu 1-197-374, entitled "TCS," registered on November 8, 2004, in all of its versions (Exhibit 2); and Copyright Registration TXu 1-197-373, entitled "TCS Plus," registered on November 8, 2004, in all of its versions, including version 1.2.1.1 (Exhibit 3), (collectively "TCS Computer Program").

10. Diebold owns all right, title and interest in U.S. Patent No. 6,672,505, entitled Automated Banking Machine Configuration System and Method ("the '505 patent") (Exhibit 6).

11. Diebold does not sell ownership rights to copies of its computer software or related support products to its customers. Instead, Diebold's end user customers enter into license agreements that grant each customer limited rights to use specific software programs with Diebold retaining all copyright and other intellectual property rights to these works. The license agreements require that the end user treat the software as Diebold's trade secret property and prohibit the transfer of the software by the end user.

12. On September 28, 2005, NuSource signed the Technology License Agreement that included provisions that survive the termination of the Technology License Agreement. One surviving provision states that NuSource shall cease all further use, access to or operation of the TCS Computer Program if the Technology License Agreement is terminated.

13. Part 1 of the Technology License Agreement specifically mentions the '505 patent and granted NuSource rights to use Diebold's invention covered by the '505 patent during the term of the Agreement. Actual notice of the '505 patent and its applicability to Diebold ATMs that operate in response to Diebold's TCS Computer Program was given to NuSource.

14. On December 6, 2005, NuSource signed the Parts Supply Agreement that included provisions that survive the termination of the Parts Supply Agreement. One surviving provision states that NuSource is granted no rights to install or use the TCS Computer Program or any other Diebold software, except as expressly authorized in the Agreement, and that NuSource acknowledges and agrees that any unauthorized installation, possession, use, reproduction, display or operation of such software is unauthorized and strictly prohibited.

15. Pursuant to the terms of the Parts Supply Agreement and Technology License Agreement, NuSource had limited access to several of Diebold's trade secret and copyrighted technologies, including the TCS Computer Program.

16. NuSource has had and continues to have knowledge of the trade secrets and Copyright Registrations for the TCS Computer Program, as well as Diebold's other trade secret and copyrighted computer programs, and the '505 patent.

17. On June 8, 2006, Diebold sent a cease and desist letter to NuSource informing NuSource that it was violating the trademark rights of Diebold. (Exhibit 4). This letter also advised NuSource that Diebold ATM software is licensed to end users under non-transferable licenses and that any copies of Diebold ATM software possessed by NuSource are unauthorized and illegal.

18. On October 3, 2006, Diebold sent a letter dated October 2, 2006 to NuSource terminating Diebold's relationship with NuSource (Exhibit 5). The Technology License

Agreement and the Parts Supply Agreement were terminated at that time, except for those provisions which survive termination.

19. Diebold has become aware that NuSource has recently sold used Diebold ATMs with unauthorized copies of the TCS Computer Program to Hamilton Pacific ("HP").

20. NuSource has offered for sale and sold to HP used Diebold ATMs with hard drives bearing the TCS Computer Program, which encompassed the invention in the '505 patent.

21. In April 2010, HP installed a used Diebold ATM with an unauthorized copy of the TCS Computer Program provided by NuSource at Lee Bank in Jonesville, Virginia.

22. In May 2010, HP installed another used Diebold ATM with an unauthorized copy of the TCS Computer Program provided by NuSource at Lee Bank in Pennington Gap, Virginia.

23. On information and belief, NuSource has and continues to illegally possess, reproduce, install, service, sell and distribute Diebold's computer software that constitutes Diebold's copyrighted and trade secret material, as well as to use, sell and offer to sell Diebold's patented invention.

### FIRST CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT

24. Diebold realleges the allegations of Paragraphs 1 through 23 of this Complaint as if fully rewritten herein.

25. Pursuant to 17 U.S.C. § 501, NuSource unlawfully infringed Diebold's copyright rights by copying, reproducing and/or distributing Diebold's unpublished copyrighted TCS Computer Program without the authorization of Diebold.

26. The Diebold TCS Computer Program that NuSource copied, reproduced and/or distributed includes works that are protected under the Federal Copyright Act, 17 U.S.C. § 101 et seq. These works are original works of authorship, owned by Diebold. NuSource's acts violated

5

Diebold's exclusive rights to reproduce, create derivative works, publish, publicly display, offer for sale and distribute these works.

27. Diebold gave NuSource notice that NuSource had infringed certain of Diebold's intellectual property rights, and on information and belief, NuSource has additionally willfully infringed such copyright rights, thus making this an exceptional case.

28. Due to NuSource's infringement of Diebold's copyright rights, NuSource has caused damage to Diebold and has unlawfully realized profits which belong to Diebold. NuSource is liable to Diebold for the full amount of such unlawful profits, or, alternatively, statutory damages and any other remedies available to Diebold in accordance with 17 U.S.C. § 504.

29. A remedy at law is not adequate to compensate Diebold for the injury caused by NuSource, and Diebold has been irreparably harmed. If NuSource's activities are not enjoined in accordance with 17 U.S.C. § 502, there will be irreparable harm to Diebold. Considering the balance of hardships between Diebold and NuSource, a remedy in equity is warranted, and the public interest would not be disserved by an injunction.

## SECOND CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS

30. Diebold realleges the allegations of Paragraphs 1 through 29 of this Complaint as if fully rewritten herein.

31. NuSource has misappropriated trade secrets of Diebold, including but not limited to possessing without authorization Diebold's trade secret computer programs and performing the ATM operations which are enabled by such programs in violation of Ohio Revised Code § 1333.61. The misappropriated trade secrets are not eligible for copyright protection.

32. NuSource has misappropriated trade secrets from Diebold and has directly and proximately caused and continues to cause harm and damage to Diebold, whereby such misappropriation has unjustly enriched NuSource.

33. On information and belief, NuSource's conduct is willful, deliberate, intentional, and in bad faith, making this an exceptional case, whereby Diebold is entitled to damages under Ohio Revised Code § 1333.63.

34. By reason of the misappropriation of Diebold's trade secrets, NuSource has caused, and unless enjoined will continue to cause, irreparable harm to Diebold. A remedy at law is not adequate to compensate Diebold for the injury caused by NuSource, and Diebold has been irreparably harmed. If NuSource's activities are not enjoined in accordance with Ohio Revised Code § 1333.62, there will be irreparable harm to Diebold. Considering the balance of hardships between Diebold and NuSource, a remedy in equity is warranted, and the public interest would not be disserved by an injunction.

### THIRD CAUSE OF ACTION
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

35. Diebold realleges the allegations of Paragraphs 1 through 34 of this Complaint as if fully rewritten herein.

36. Diebold and NuSource are competitors.

37. NuSource's actions, while doing business in interstate commerce, including reproduction and distribution of the TCS Computer Software, are likely to cause confusion, mistake, or deception as to the affiliation, connection or association of its business with Diebold, and are also likely to cause confusion as to the origin, sponsorship, or approval of NuSource's services and activities by another person or business, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38. As a result of NuSource's misconduct, Diebold has been damaged.

39. As a result of NuSource's misconduct, Diebold has been irreparably harmed and has no adequate remedy at law. If NuSource's misconduct continues, consumers are likely to become further confused as to the source of Diebold's trade secret and copyrighted TCS Computer Program. The infringement by NuSource constitutes interference with Diebold's reputation, and NuSource's misconduct is ongoing. Considering the balance of hardships between Diebold and NuSource, a remedy in equity is warranted, and the public interest would not be disserved by an injunction. Accordingly, Diebold is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## FOURTH CAUSE OF ACTION
## BREACH OF TECHNOLOGY AGREEMENT

40. Diebold realleges the allegations of Paragraphs 1 through 39 of this Complaint as if fully rewritten herein.

41. NuSource has continuing obligations pursuant to the Technology License Agreement.

42. NuSource has violated its continuing obligations under the Technology License Agreement, including without limitation, the obligation to cease possession, use, access to and operation of the TCS Computer Program.

43. As a result of NuSource's breach of the Technology License Agreement, Diebold has been damaged.

44. Diebold has no adequate remedy at law and Diebold has been irreparably harmed. If NuSource's activities are not enjoined, there will be irreparable harm to Diebold. Considering the balance of hardships between Diebold and NuSource, a remedy in equity is warranted, and the public interest would not be disserved by an injunction.

## FIFTH CAUSE OF ACTION
## BREACH OF PARTS SUPPLY AGREEMENT

45. Diebold realleges the allegations of Paragraphs 1 through 44 of this Complaint as if fully rewritten herein.

46. NuSource has continuing obligations pursuant to the Parts Supply Agreement.

47. NuSource has violated its continuing obligations under the Parts Supply Agreement, including without limitation, the obligations not to use, possess, reproduce or operate the TCS Computer Program.

48. As a result of NuSource's breach of the Parts Supply Agreement, Diebold has been damaged.

49. Diebold has no adequate remedy at law and Diebold has been irreparably harmed. If NuSource's activities are not enjoined, there will be irreparable harm to Diebold. Considering the balance of hardships between Diebold and NuSource, a remedy in equity is warranted, and the public interest would not be disserved by an injunction.

## SIXTH CAUSE OF ACTION
## PATENT INFRINGEMENT

50. Diebold realleges the allegations of Paragraphs 1 through 49 of this Complaint as if fully rewritten herein.

51. On January 6, 2004, the '505 patent was duly and legally issued to Diebold, Incorporated. A true and correct copy of the '505 patent is attached hereto as Exhibit 6.

52. The '505 patent discloses and claims, among other things, computer readable media which causes an ATM to carry out enumerated steps.

53. Claim 12 of the '505 patent states as follows:

> Computer readable media bearing instructions which are operative to cause a computer in an automated banking machine to carry out the method steps of:
>
> a) receiving through operation of the banking machine at least one first authorization value;
>
> b) calculating through operation of the banking machine at least one second authorization value responsive to a plurality of configuration parameters associated with the banking machine;
>
> c) determining through operation of the banking machine that the at least one first authorization value corresponds to the at least one second authorization value; and
>
> d) enabling configuration of software on the banking machine responsive to the determination in step (c).

54.     The used Diebold ATMs that NuSource used, offered to sell and sold to HP, and which were installed at Lee Bank, infringe at least Claim 12 of the '505 patent.

55.     NuSource has used, sold, offered to sell, caused to sell or caused to offer to sell automated banking machines which incorporate every element of at least Claim 12 of the '505 patent, or substantial equivalents thereof.

56.     NuSource has, and upon information and belief, continues to directly or indirectly infringe at least the above Claim 12 of the '505 patent, either literally or under the doctrine of equivalents.

57.     NuSource is liable for infringement of the '505 patent pursuant to 35 U.S.C. § 271.

58.     As a result of NuSource's infringement, Diebold has been damaged.

59.     NuSource's actions in infringing the '505 patent have been, and continue to be, willful, deliberate and/or in conscious disregard to the rights of Diebold, making this an exceptional case within the meaning of 35 U.S.C. § 285.

60. NuSource's infringement of the '505 patent has caused, and continues to cause, irreparable harm to Diebold in an amount to be proven at trial.

61. The infringement of the '505 patent by NuSource will continue unless enjoined by this Court. A remedy at law is not adequate to compensate Diebold for the injury caused by NuSource, and Diebold has been irreparably harmed. If NuSource's activities are not enjoined in accordance with 35 U.S.C. § 283, there will be irreparable harm to Diebold. Considering the balance of hardships between Diebold and NuSource a remedy in equity is warranted, and the public interest would not be disserviced by an injunction.

WHEREFORE, Diebold prays the Court grant it the following relief:

a) Enter a judgment against NuSource on behalf of Diebold;

b) Injunctive relief in accordance with 17 U.S.C. § 502, Ohio Revised Code § 1333.62, 15 U.S.C. § 1116 and 35 U.S.C. § 283 barring NuSource, its officers, directors, agents, subsidiaries and employees, and those in privity or in active concert with them, from possessing, using, operating, accessing, copying, installing, servicing, distributing, selling, and reproducing in any manner whatsoever any computer programs in which the copyright or trade secret is owned by Diebold, or any derivatives thereof, and from further activities that constitute infringement of U.S. Patent No. 6,672,505;

c) Impounding or other reasonable disposition of all infringing materials in accordance with 17 U.S.C. § 503;

d) An accounting of profits improperly earned by NuSource as a result of NuSource's misconduct and violation of Diebold's trade secret and copyright rights;

e) Damages from NuSource in an amount of the total of all NuSource profits from the sale, service, operation or distribution of the misappropriated trade secrets and infringing

11

copyrighted software in accordance with 17 U.S.C. § 504 and Ohio Revised Code § 1333.63; or statutory damages on account of NuSource's violation of Diebold's copyright rights in accordance with 17 U.S.C. § 504;

  f) An award of lost profits or a reasonable royalty and other damages arising from NuSource's infringement of U.S. Patent No. 6,672,505, including triple damages to Diebold, together with pre-judgment and post-judgment interest;

  g) An Order awarding Diebold punitive damages in a sum to be determined at trial, on the basis of NuSource's willful and deliberate violation of such rights in accordance with Ohio Revised Code § 1333.63;

  h) An award of attorney's fees and costs of the action in accordance with 17 U.S.C. § 505, Ohio Revised Code § 1333.64, and 35 U.S.C. § 285;

  i) An award of other compensatory damages;

  j) An award of prejudgment interest; and

  k) Such other and further relief as Diebold may be entitled in equity or law.

  A TRIAL BY JURY IS HEREBY DEMANDED.

        Respectfully submitted,

        _____/s/ Ralph E. Jocke_____
        Ralph E. Jocke  Ohio Reg. No. 0011642
        Patricia A. Walker Ohio Reg. No. 0001779
        Attorneys for Plaintiff
        Walker & Jocke
        231 South Broadway
        Medina, Ohio 44256
        Phone: 330-721-0000
        Fax: 330-722-6446
        E-mail: iplaw@walkerandjocke.com

## LIST OF EXHIBITS

Exhibit 1.  Copyright Registration TXu 834-249, entitled "TCS 4.50.01," registered on May 12, 1999, in all of its versions.

Exhibit 2.  Copyright Registration TXu 1-197-374, entitled "TCS," registered on November 8, 2004, in all of its versions.

Exhibit 3.  Copyright Registration TXu 1-197-373, entitled "TCS Plus," registered on November 8, 2004, in all of its versions, including version 1.2.1.1.

Exhibit 4.  Cease and desist letter sent to NuSource on June 8, 2006.

Exhibit 5.  Termination letter sent to NuSource on October 3, 2006.

Exhibit 6.  U.S. Patent No. 6,672,505, entitled Automated Banking Machine Configuration System and Method